**KLOTZ & McCANN**
**Robert W. McCann (RM 6192)**
**150 Broadway, Suite 2206**
**New York, NY 10038**
    **and**
**649 Lafayette Avenue**
**P.O. Box 654**
**Hawthorne, NJ 07507**
**Please Respond to Hawthorne address**
**(973) 427-8900**
**(973) 427-4453 Facsimile**
**Attorneys for Plaintiff, Colonial Surety Co.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

COLONIAL SURETY COMPANY,      :      <u>ECF Case</u>

         Plaintiff,      :      Civil Action

   - against -      :      Docket No.

THE COUNTY OF PUTNAM,      :
a Public Corporation of New York,      :      **COMPLAINT**

         Defendant.      :

------------------------------------------------------x

**JUDGE CONNER**

**08 CIV. 2202**

Plaintiff, Colonial Surety Co., by way of Complaint against the County of Putnam of the

State of New York, says:

<u>**JURISDICTION AND VENUE**</u>

     1.      Jurisdiction is conferred upon the Court pursuant to 28 USC §1332(a) in that this

action is between citizens of different states and the amount of controversy exceeds $75,000

exclusive of interest and costs.



2.      Venue is proper in this District pursuant to 28 USC §1391 in that Defendant's principal place of business is in this District and a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

3.      At all times hereinafter mentioned, Colonial Surety Company was a Pennsylvania corporation, having its principal place of business in Montvale, New Jersey.

4.      At all times hereinafter mentioned, the County of Putnam was a public corporation of the State of New York and had its principal place of business in Carmel, New York.

## THE PERFORMANCE BOND

5.      On or about March 15, 2005, the Defendant, County of Putnam entered into a contract with Realife Land Improvement, Inc. (hereinafter "Realife") for the Reconstruction of Fair Street (CR60) and Replacement of Bin 3345590 over Middle Branch Croton River, Contract No. RSB130147, (hereinafter the "Fair Street Project").

6.      On or about March 22, 2005, the Plaintiff executed its payment and performance bond wherein Colonial as surety for Realife became obligated to the Defendant as obligee for the performance of the Fair Street project by Realife and the payment of persons and firms that furnished goods or services to Realife in the performance of the project.

7.      The aforesaid bond No. CSC-211460 was delivered to the Defendant, County of Putnam, in compliance with New York State Finance Law, Section 137.  A copy of said bond is annexed hereto as Exhibit A.

## COLONIAL'S BOND EXPOSURE

8.     Colonial, as payment bond surety for Realife, has received claims from various subcontractors and material suppliers demanding payment for sums owed to them by Realife.

9.     Plaintiff has made demand upon its bond principal, Realife, to make payment to the various claimants on its bond but Realife has failed to make such payment and has advised it is insolvent and has no funds to satisfy the claims for the Defendant, County of Putnam, refuses to pay it the contract balances it has earned and failed to pay for additional work ordered by the County of Putnam.

10.     On August 16, 2007, Carmine Labriola, as General Manager of Realife, furnished an Affidavit to Colonial advising it was making claim against the County of Putnam for $1,899.000.46 for losses resulting from work performed under a force account at the Fair Street project.

11.     Plaintiff has made the following payments to bond claimants and received an assignment of their rights.

| | | |
|---|---|---|
| June 27, 2007 | Cavaliere Industries, Inc. | $ 4,144.50 |
| July 23, 2007 | Safety Marking, Inc. | $ 5,790.62 |
| February 6, 2008 | A&J Cianciulli, Inc. | $20,000.00 |
| | Total | $29,935.12 |

12.     Plaintiff has received claims from the following unpaid subcontractors and suppliers to Realife on the Fair Street project:

| | | |
|---|---|---|
| a. | Patterson Blacktop Corp. | $ 4,637.87 |
| b. | Peckham Materials Corp. | $ 936.00 |
| c. | Peckham Road Corp. | $162,706.02 |
| d. | Patterson Materials Corp. | $118,345.77 |
| e. | Wingdale Materials, LLC | $ 4,077.92 |
| f. | Annadale Construction Corp. | $ 23,249.95 |
| g. | Unitech Corp. | $ 3,781.09 |
| h. | Trustees Laborers Local 1000 | $ 44,925.07 |
| | Total | $362,659.69 |

3

13.     As a result of Defendant, Putnam County's, failure to pay Realife the contract balances and additional work it ordered from Realife by force account, the Plaintiff has received demands on its payment bond in excess of $390,000.

14.     Plaintiff has demanded the County of Putnam pay it the contract balances, together with the value of the additional work ordered by force account from Realife.

15.     Defendant has refused

### CONTRACT BALANCES AS A STATUTORY TRUST

16.     The contract balance and all claims for extra payment for force account work on the Fair Street project are impressed with a statutory trust pursuant to New York Lien Law, Section 70 and said lien is for the use and benefit of all unpaid laborers and suppliers who furnished goods or services to the bonded work and for those who are subrogated to the rights of such persons.

17.     The Plaintiff has made payments of $29,935.12 to payment bond claimants and has received assignment of the rights of said claimants and is subrogated to the rights of such persons in the contract balance which Defendant holds in trust for their benefit.

18.     The Plaintiff has additional claims pending in the sum of $362,659.69 as set forth in paragraph 12 above.  Plaintiff will be subrogated to the rights of said claimants upon payment. Plaintiff has informed the Defendant of its right to have an accounting of the contract balance which are statutory trust funds to be used to satisfy the subcontractors and suppliers to the Fair Street project.

19.     Defendant has failed and refused to provide any information or account for the funds earned by Realife and has not acknowledged Plaintiff's right to any interest in the fund to the extent it has paid or will pay the bond claims against Realife.

4

20.     Realife, on or about April, 2003, executed and delivered to Colonial Surety Co. a financing statement assigning accounts and contract rights to Colonial.  Said financing statement was filed pursuant to Uniform Commercial Code and duly recorded in the Office of the Secretary of State under filing number 200304100791305 on April 10, 2003, a copy of which is annexed as Exhibit B.

21.     Pursuant to paragraph 8(a) (3) of the General Indemnity Agreement, which forms part of Exhibit B-2 hereto, the Plaintiff assigned all accounts receivable, including any and all sums due on which may thereafter become due on any contract bonded or unbounded in which Realife had any interest.

22.     Colonial Surety, by its counsel, has informed the Defendant, County of Putnam, that Realife has assigned the contract account balance due from the County of Putnam for work performed on the project described in paragraph five above.  Plaintiff has failed and refused to deliver said balances nor to account for the funds earned by Realife in performance of the bonded work.

23.     On or about February 8, 2008, the Plaintiff served and filed a Proof of Claim upon the County of Putnam.  A copy of said claim in the sum of $750,000 is annexed as Exhibit C.

## FIRST COUNT

24.     Plaintiff repeats the allegations of paragraphs 1 through 23 as if the same were herein set forth at length.

25.     Plaintiff, under provisions of its bond and Section 137 of New York Finance Law, is exposed to payment of the subcontractors and suppliers of Realife for goods and services supplied in performance of the Fair Street project.

26.    Defendant, County of Putnam, is a trustee of the contract balance earned in performance of the Fair Street project by virtue of New York Lien Law, Section 70.

27.    Plaintiff has informed the Defendant that it has made payment of claims of subcontractors and suppliers and is by written assignment of said claims a beneficiary of the trust funds held by Defendant as contract balances.

28.    Plaintiff has requested a right to inspect and copy records of the Defendant to determine what contract balances are available as trust assets to satisfy the claims of the unpaid subcontractors and suppliers.

29.    Defendant has ignored all requests for payment and an inspection and accounting of the contract balances.

WHEREFORE, Colonial Surety Company demands judgment that it is a trust beneficiary of the contract balances held by the Defendant on Contract RSB130147 and that Plaintiff is presently entitled to recover from said balances $29,935.12 for payments it has made and may recover from the contract balances all future payments to unpaid subcontractors and suppliers of Realife.

## SECOND COUNT

30.    Pursuant to New York Lien Law, Section 76, the Plaintiff, as a beneficiary of the Trust, established by New York Lien Law, Section 70 did demand the right to examine the books and records of the Defendant pertaining to the Fair Street project.

31.    Defendant has failed and refused to provide Plaintiff with an opportunity to examine such books and records and pursuant to New York Lien Law, Section 77(3)(a).

Plaintiff demands:

6

(1)    Judgment compelling interim accounting by the Defendant as Trustee of the contract funds for the Fair Street project.

(2)    Enforcement of the Plaintiff's right as trust beneficiary to payment from the trust funds for its satisfaction of the claims of subcontractors and suppliers it has paid.

(3)    Determination of the existence and amount of all trust assets and all claims upon said assets.

(4)    Directing the Defendant make no disbursement to any party other than the trust beneficiaries.

(5)    An order of distribution of the trust funds.

(6)    An order fixing the priority of trust beneficiaries as provided in New York Lien Law, Section 77(8); and

(7)    Such other relief as the Court may deem necessary and proper.

KLOTZ & McCANN
Attorneys for Plaintiff

By: _____
Robert W. McCann

Dated: March 3rd, 2008

7

## NOTICE OF RELATED CASES

Pursuant to Local Civil Rule 1.6(a), the following case may be relevant to determination of which Judge should hear the case of Colonial Surety Co. v. The County of Putnam.

Hon. Stephen C. Robinson has the following case on his calendar:

Trustees of Laborers International Union of North America Local 1000- Welfare Pension, Annuity, Vacation and Training Funds and Laborers International Union of North America against Realife Land Improvement, Inc. and Carmine L. Labriola and Colonial Surety Co. (as surety for Realife Land Improvement, Inc.), Docket No.        06 CIV 14365 (SCR) (LMS).

The Laborers Local 1000 is one of the claimants against Colonial Surety's payment bond and is under the New York Lien Law a beneficiary of the funds held by the Defendant, County of Putnam.  Local 1000's claim is referred to in Colonial's Complaint against the County of Putnam in paragraph 12(h).

# COLONIAL SURETY COMPANY

- Inc. 1930 -

50 Chestnut Ridge Road
Montvale, NJ 07645
201-573-8788

BOND NUMBER  CSC-211460

## PERFORMANCE BOND

Approved by The American Institute of Architects
A.I.A. Document No. A-311 (Feb. 1970 Edition)

KNOW ALL PERSONS BY THESE PRESENTS:

That   **Realife Land Improvement, Inc., Patterson, NY**
as Principal, hereinafter called Contractor, and COLONIAL SURETY COMPANY a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, as Surety, hereinafter called Surety, are held and firmly bound unto

**County of Putnam, Carmel, NY  10512**

as Obligee, hereinafter called the Owner, in the amount of

**Three Million Six Hundred Eighty Seven Thousand Two Hundred Dollars And No Cents Dollars ($3,687,200.00),**

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated   **March 15th, 2005,**   entered into a contract with the Owner for **Reconstruction of Fair Street (CR 60) & Replacement of Bin 3345590 over Middle Branch Croton River – Contract No. RSB 130147**

in accordance with drawings and specifications prepared by (here insert full name, title and address) , , ,   which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
(1) Complete the Contract in accordance with its terms and conditions, or
(2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term 'balance of the contract price', as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of Owner.

Signed and sealed this   **22nd day of March A.D., 2005.**

In the presence of:                                          Realife Land Improvement, Inc.

_____ _____ _____      By_____ _____(Seal)
                                                                              (Principal)


                                                            **COLONIAL SURETY COMPANY**

                                                            By_____.                ____(Seal)
Exhibit A                                                      Sherryanne DePirro         Attorney-in-Fact

Form C200-104

Apr-10-2008 03:10pm From-Colonial Surety     +12015731062     T-902   P.002/008   F-539

457692

2008 APR 10 PM 3: 45

**DRAWDOWN**
**ACCT # 6N**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Toni Vuolo     201-573-8788 ext. 11

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
Colonial Surety Company
50 Chestnut Ridge Road, Suite 108
Montvale, NJ 07645
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Realife Land Improvement, Inc. | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| Box 177 | Katonah | | NY | 10536 | USA |
| 1d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| Labriola | Susan | | | | |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 80 Cherry St. | Katonah | | NY | 10536 | USA |
| 2d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☑ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Colonial Surety Company | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 50 Chestnut Ridge Road | Montvale | | NJ | 07645 | USA |



4. This FINANCING STATEMENT covers the following collateral:

All Debtor's rights, title and interest in and to the collateral described in "General Indemnity Agreement of 05/03/00" attached hereto as Exhibit "A" including (1) all machinery, inventory and equipment, and proceeds and products thereof, including insurance proceeds now owned or hereafter acquired by Debtor; and (2) all accounts and contract rights.

5. ALTERNATIVE DESIGNATION (if applicable) LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING ☐

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) [optional] All Debtors ☐ Debtor 1 ☐ Debtor 2 ☐

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**FILING NUMBER: 200304100791305** ✓

Exhibit B - 1

# COLONIAL SURETY COMPANY
### Duncannon, Pennsylvania
Administrative Office: 50 Chestnut Ridge Road, Montvale, New Jersey 07645

# GENERAL INDEMNITY AGREEMENT

THIS AGREEMENT of indemnity, made and entered into this __3rd__ day of __May__, 20 __00__, is executed by the undersigned (jointly and severally, including the Principal as defined below, hereinafter collectively "Indemnitor") for the purpose of indemnifying COLONIAL SURETY COMPANY (the "Company") and any other entity who may act as Surety, as hereinafter defined, in connection with any Bonds written on behalf of

__Realife Land Improvement, Inc.__

of: __Box 177, Katonah, NY 10536__

(hereinafter referred to as the "Principal.")                                    (address)

NOW THEREFORE, in consideration of and in connection with the Company's and all of its subsidiaries or affiliate companies presently in existence or hereinafter added, execution or procurement at the request of Indemnitor of the suretyship for which application is now pending, or which may be hereafter applied for, or other suretyship, in lieu thereof or in lieu of suretyship now outstanding, or related or in connection therewith, Indemnitor and the Company hereby undertake and agree:

1. **DEFINITIONS.** The following terms, when capitalized in this Agreement have the meanings set forth herein:

Bond - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal, alteration, modification or extension of said obligation.

Principal - The person or entity set forth above or any one or combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.

Indemnitor - All persons executing this Agreement with the Surety, including the Principal. The Principal and Indemnitor are sometimes referred to hereafter as the "Undersigned."

Surety - COLONIAL SURETY COMPANY, its reinsurers and any other person or entity which the Company may procure to act as surety or co-surety on any Bond or any other person or entity who executes any Bond at the Company's request.

Contract - Any agreement or other undertaking by Principal, the performance of which is bonded by Surety and all extensions, modifications and renewals thereof, whether made before or after the date of this Agreement, and all agreements between the Undersigned and Surety.

2. **PREMIUM.** Indemnitor will pay, or cause to be paid, to the Company, as and when each and every Bond is executed the premium therefore calculated on the contract price in accordance with the regular scheduled rates of the Company then in force, and annually thereafter (except when the initial premium is scheduled as term premium) shall pay or cause to be paid to the Company the annual premium therefore (and for any and all renewals, contract billing overruns or extensions thereof) in accordance with such rates until Principal shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from suretyship. All premium shall be considered earned when due. In the event of contract overruns, Indemnitor shall pay to the Company, upon audit, any additional premium which is due to the Company as a result of a contract overrun. It is understood and agreed that all premium is FULLY EARNED UPON issuance of the Bond AND IS NOT REFUNDABLE. Non-Payment of premium obligation by Indemnitor constitutes default of the obligations as outlined in this agreement. There are no premium returns for contract overruns.

3. **INDEMNITY.** Indemnitor and your successors agree to perform all of the conditions of each Bond and Contract and to indemnify and save harmless Surety from and against any and all (I) demands, liabilities, losses, costs, damages or expenses of whatever nature or kind, including all fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of Bonds, enforcement of any Contract with Indemnitor, and in attempting to recover losses or expenses from Indemnitor, or third parties, whether or not Surety shall have paid out any or all of such sums, (II) amounts sufficient to discharge any claim made against Surety on any Bond, which amounts may be used by Surety to pay such claim, or may be held by Surety as collateral security against any loss on any Bond, and (III) any premiums due on Bonds by the Surety on behalf of the Principal (hereinafter the "Indemnity").

4. **RIGHTS OF SURETY.** In furtherance of the indemnity hereunder:

A. Surety shall have the right in its sole discretion to determine whether any claims shall be paid, compromised, defended, prosecuted or appealed.

B. Surety shall have the right to incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigation, accounting, engineering and legal services, and Surety's good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon Indemnitor.

C. Surety shall have the foregoing rights, irrespective of the fact that Indemnitor may have assumed, or offered to assume, the defense of Surety upon such claim.

D. In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be _prima facie_ evidence of the fact and extent of the liability hereunder of Indemnitor.

E. Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. Surety may recover from Indemnitor its expenses and attorneys' fees incurred in prosecuting or defending any action arising out of or relating to this Agreement or other Contract with Indemnitor.

5. **DEFAULT.** Indemnitor shall be in Default with respect to a Contract if any of the following occur:

A. Principal or any Indemnitor breaches, abandons or repudiates any Contract.

B. Any beneficiary of a Bond or obligee of a Contract declares Principal to be in default.

C. Principal fails to pay for any labor or materials when such payment is due.

D. Principal diverts any Contract funds from one Contract to another, prior to the complete discharge of Surety.

E. Principal or any Indemnitor breaches any provision of this Agreement or Contract with Surety.

F. Principal fails to remit premiums when due.

G. Principal or any Indemnitor becomes the subject of any agreement or proceedings, voluntary or involuntary, of liquidation, insolvency, bankruptcy, reorganization, receivership, trusteeship, or assignment for creditors or actually becomes insolvent.

H. Principal, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from justice or disappears and cannot be located without costly or extraordinary methods.

6. **REMEDIES UPON DEFAULT.** In the event of Default, as defined above, Surety may at its option and sole discretion take any or all of the following actions:

a. assume the administration of any Contract and arrange for its completion;

B. take possession of and operate and use the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract without liability for any rental for or liability for losses arising from such use;

C. take possession of and operate and use the office equipment, books and records of Principal as are necessary for completion of any Contract;

D. loan such funds or guarantee a loan for such funds as Surety shall deem necessary for the completion of any Contract and for the discharge of Surety in connection with any Contract. Repayment of such loan shall be covered by the Indemnity hereunder; and,

E. file an immediate suit to enforce any or all of the provisions of this Agreement.

7. **COLLATERAL SECURITY.** If a claim is made against Surety, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, Indemnitor shall immediately deposit with Surety cash or other property acceptable to Surety, as collateral security, to protect Surety with respect to such claim or potential claims and any anticipated expense or attorneys' fees. Such collateral security shall be in such amount as Surety in its sole discretion deems appropriate. Such collateral may be held by Surety until it has received satisfactory evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all losses, expenses and fees, and paid all premiums due. Surety has no obligation to Indemnitor to provide a return on the collateral deposit.

8. **ASSIGNMENT.** As security for the performance of all of the provisions of this Agreement each Indemnitor hereby:

A. assigns, transfers, pledges and conveys to Surety any and all claims of such Indemnitor against, or any sums due and owing to such Indemnitor by, the Principal and (effective as of the date of each Bond) all rights in connection with any Contract, including but not limited to:

FORM S-100-102 Rev. 1/00

Exhibit B - 2

2. all rights, title, and interest of Principal in and to all machinery, facilities, equipment, tools, materials or supplies which are used or required in connection with the Contracts, including all materials ordered for the Contracts, whether located at the site of the work under such Contracts, or elsewhere;

3. all consideration to be paid by Principal or whomever, or which otherwise becomes due or to become due on all other contracts, bonded or unbonded, in which Indemnitor has an interest;

4. any and all real property owned by Indemnitor including, all fixtures; and

5. all rights arising out of insurance policies held by any Indemnitor, or of which any Indemnitor is a beneficiary; and

B. agrees that all monies due or to become due Principal under any Contract are trust funds, whether in possession of Principal or otherwise, for the benefit of and payment of Principal's obligations for labor, materials and supplies furnished in performance of such Contract for which Surety would or could be liable under any Bond for such Contract. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

**9. POWER OF ATTORNEY.** The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Company or its designee as their attorney-in-fact with the right but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents, instruments or papers, including but not limited to vouchers, releases, bills of sale, financing statements and schedules thereto and the endorsements of checks or other instruments representing payment of Contract monies, and any other document deemed necessary or appropriate by Surety to give full effect, not only to the intent and meaning of the within assignment, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Undersigned hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as attorney-in-fact. This power of attorney is irrevocable and is coupled with an interest and shall survive the subsequent disability or legal incapacity of any or all the Undersigned.

**10. GENERAL PROVISIONS.**

A. The obligations of the Indemnitor hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal.

B. Indemnitor will, on request of Surety, procure the discharge of Surety from any Bond, and a liability by reason thereof;

C. Indemnitor warrants that each is specifically and beneficially interested in the obtaining of each Bond. To the extent a spousal signature to this Agreement is requested by Surety, the Undersigned hereby acknowledge that each has a substantial, material, beneficial interest in Principal obtaining the Bonds and that neither the Principal nor spouse independently satisfied Surety's credit standards. Further, the Undersigned hereby warrant the validity of the signatures of each other Indemnitor hereunder.

D. Indemnitor waives notice of any Default, the making of a claim against Surety, Surety's loaning of funds to Principal or any defense which could arise by the granting by Surety of any indulgence to the Principal.

E. Indemnitor agrees to give to Surety prompt notice: (i) of any facts which might give rise to any claims or suit against Surety upon any Bond; (ii) any material change in the financial condition of any Indemnitor; and, (iii) of any lawsuits, liens, or judgments against the Undersigned.

F. Surety shall have the right, at its option and in its sole discretion, to decline execution of any Bond, including performance and payment bonds when it has furnished a bid bond. Surety may decline to execute any bond applied for, regardless of the bonding line, without incurring any liability whatever to the Undersigned. Further, the Undersigned shall waive any claims and rights based upon principles of promissory estoppel, detrimental reliance, negligent misrepresentation, breach of fiduciary relationship, and custom and usage that could affect Surety's absolute right to decline to write any Bond. Surety's declination of any bond request shall not affect the obligations of Indemnitor with respect to any other Bond.

G. Surety may consent to any changes or alterations in a Contract, without affecting the liability hereunder of Indemnitor.

H. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the remedies of exoneration and quia timet relief.

I. Until Surety shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as here under provided, Surety shall have the right to free access to the books, records, and accounts of Indemnitor for the purpose of examining and copying them. Undersigned here by authorize third parties, including, but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms or entities as it may deem appropriate.

J. To the full extent permitted by law, Indemnitor waives all right to claim any property, including your homestead, as exempt from legal process in any action hereunder.

K. If the execution hereof by any Indemnitor may be defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other Indemnitor. Invalidity of all or part of any provision hereof by reason of the law of any jurisdiction or for any other reason shall not render the remainder of this Agreement invalid.

L. The Surety may, at its option, file or record this Agreement or any other document executed by any or all Indemnitors, individually or jointly, in connection with application, issuance or execution of any Bond coming within the scope of this instrument, as a security agreement or as a part of a financing statement or as a notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of Indemnitor under this Agreement.

M. Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

N. Indemnitor waives any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to Indemnitor's request and in reliance on Indemnitor's promise to execute this Agreement.

O. This Agreement (including this section) may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing by each party against whom enforcement is sought.

P. In the event that any Indemnitor shall (i) fail to execute this instrument; or (ii) become insolvent; or (iii) fail to be bound hereby for any reason, the remaining Indemnitors shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

Q. Repeated actions may be brought under this Agreement as breaches thereof may occur, without any former action operating as a bar to any subsequent action.

R. Wherever used in this instrument the plural shall include the singular and the singular shall include the plural, as the circumstances require.

S. The liability of Indemnitors hereunder shall not be affected by the failure of the Principal to sign any Bond or by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or the return or exchange of any collateral, that may have been obtained.

T. To the full extent permitted by law, Indemnitor waives the right to interpose any defense, including any set-off or counterclaim of any nature or description in any action pursued by Surety for enforcement of this Agreement or any Contract. Further, in any action by Surety against Indemnitor, each agrees that service of process may be any action pursued by Surety for enforcement of this Agreement or any Contract. Further, Indemnitor hereby expressly waives the right to demand a jury trial in any action with Surety, made on anyone of them and will be effective as to all of the Undersigned. Further, Indemnitor hereby expressly waives the right to demand a jury trial in any action with Surety.

U. Principal agrees and acknowledges that it will be solely responsible for ensuring that the Bonds comply with the contract specifications and Indemnitor agrees to hold Surety harmless from any error related to non-compliance with contractual specifications or statutory requirements. Further, it is acknowledged by the Undersigned that Surety does not guarantee the acceptance of its Bonds by any obligee.

V. If the Undersigned desire that a claim or demand against surety shall be defended, the Undersigned shall (i) give written notice to the Surety to this effect; (ii) simultaneously deposit with the Surety cash or collateral satisfactory to the Surety in an amount sufficient to cover the claim or demand, interest, and other exposure thereon, to the probable date of disposition; and, (iii) other deposit simultaneously with the Surety cash or collateral satisfactory to the Surety in an amount sufficient to cover all of its anticipated expenses and fees of defense. Otherwise, Surety shall have the sole and exclusive right to pay or settle any such claim or demand, and such payment or compromise shall be binding upon the Undersigned and included as a liability, loss, or expense covered by the Undersigned's indemnity obligations.

W. Surety may reduce the amount of Indemnitor's liability to Surety by applying to such liability any money payable to Principal by Surety.

X. This Agreement is to be liberally construed so as to protect, exonerate, and indemnify Surety.

**11. TERMINATION.** This Agreement is a continuing obligation of Indemnitor unless terminated by written notice to Surety as hereinafter provided, and such termination as to an Indemnitor shall in no way affect the obligation of any other Indemnitor who has not given such notice. The liability of Indemnitor hereunder as to future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known or learned by Surety about the Principal, even though such facts materially increase the risk beyond that which Indemnitor might intend to assume. Surety may have reason to believe such facts are unknown to Indemnitor, and Surety may have reasonable opportunity to communicate such facts to Indemnitor and the Undersigned hereby waive notice of such facts. In order to terminate liability as to future Bonds of Principal, an Indemnitor must:

A. give written notice by certified or registered mail to Surety at its Administrative Office, Montvale, New Jersey, of such termination; and

B. state in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Indemnitor's liability to future Bonds.

After the effective date of such termination, any Indemnitor who has given notice shall nonetheless be liable hereunder for:

A. Bonds executed or authorized prior to such date, and renewals, substitutions and extensions thereof;

B. Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such date and renewals, substitutions and extensions thereof; and

C. any maintenance or guarantee Bonds executed hereunder or incidental to any other Bond executed prior to such date, and renewals, substitutions and extensions thereof.

**12.** The Undersigned represent to the Surety that they have carefully read this entire Agreement and that there are no other agreements or understandings which in any way lessen Indemnitors' obligations set forth herein. Further, the Undersigned represent, warrant, and certify that they have no indemnification arrangements or agreements in effect with any other surety.

IN WITNESS WHEREOF, we have hereunto set our hands and seals, and the Undersigned (who are partnerships, corporations, or unincorporated associates, have caused the Agreement to be duly executed by their duly authorized representatives, the day and year first above written.

2

**ATTEST OR WITNESS**

Realife Land Improvements, Inc.
(Full Name & Address of Principal)

Box 177
Katonah, NY 10536

_Lisa Rosetti_

By _____ (SEAL)

Susan Labriola, President

**INDEMNITORS**

**ATTEST OR WITNESS**

(Full Name & Address of Indemnitor)

_Sara Rose_

By _____ (SEAL)

Signature _____          Signature _____

Name Susan Labriola                                  Name Carmine Labriola

Residence Address _____          Residence Address _____

Business Address _____           Business Address _____

Signature _____          Signature _____

Name _____               Name _____

Residence Address _____          Residence Address _____

Business Address _____           Business Address _____

Signature _____          Signature _____

Name _____               Name _____

Residence Address _____          Residence Address _____

Business Address _____           Business Address _____

**COLONIAL SURETY COMPANY**
(Surety)

_____          By _Sherryanne DePiero_ (SEAL)

3

_____, in the year 20 __ , before me personally

_____ resides in the City of ___Katrah___ , to me known, who,
of ___Realife Land Improvement___ that he is the
the foregoing instrument; that he knows the seal of the said corporation;
corporate seal; that it was so affixed by the order of the Board of Direct-
me thereto by like order.

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999
2001

ss.:

_____, 20 _____ , before me personally

_____, to me known and known to me to
____ed in and who executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)

**of Individual Indemnitor's Signatures**

ss.:

_____, in the year 20 _____ , before me personally

_____ resides in the City of _____, to me known, who,
_____ of _____ that he is the
the foregoing instrument; that he knows the seal of the said corporation;
corporate seal; that it was so affixed by the order of the Board of Directors of
____ereto by like order.

_____
Notary Public
(Seal and Address)

ss.:

_____, 20 __ , before me personally

_____, to me known and known to me to
____ed in and who executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999
2001

ss.:

_____, 20 __ , before me personally

_____, to me known and known to me to
____ed in and who executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999
2001

4

---

_____, in the year 20 __ , before me personally

_____, to me known, who,
of ___Realife Land Improvement___ that he is the
instrument; that he knows the seal of the said corporation;
al; that it was so affixed by the order of the Board of Direct-
like order.

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999
2001

_____, 20 _____ , before me personally

_____, to me known and known to me to
____o executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)

**al Indemnitor's Signatures**

_____, in the year 20 _____ , before me personally

_____ City of _____ that he is the
of _____
g instrument; that he knows the seal of the said corporation;
al; that it was so affixed by the order of the Board of Directors of
order.

_____
Notary Public
(Seal and Address)

_____, 20 __ , before me personally

_____, to me known and known to me to
____o executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999
2001

_____, 20 __ , before me personally

_____, to me known and known to me to
____o executed the foregoing instrument, and that he thereupon

_____
Notary Public
(Seal and Address)
ELAINE M. GREGUS
Notary Public, State of New York
No. 01GR4986541
Qualified in Westchester County
Commission Expires Sept. 16, 1999

# PROOF OF CLAIM

## COLONIAL SURETY COMPANY

### against

## THE COUNTY OF PUTNAM

TO:    County of Putnam
40 Gleneida Avenue
Carmel. NY 10512

PLEASE TAKE NOTICE that the undersigned claimant hereby makes claim and demand against the County of Putnam, as follows:

1.    The name and post office address of each claimant and claimant's attorney is:

Claimant
Colonial Surety Co.
50 Chestnut Ridge Road
Montvale, NJ 07645

Claimant's Attorney
Klotz & McCann
P.O. Box 654
649 Lafayette Avenue
Hawthorne, NJ 07507

2.    Nature of the claim:    This is a claim by a performance and payment bond surety for contract balances which are trust funds for the use and benefit of the laborers, material suppliers and subcontractors that furnished goods or services to Realife Land Improvement, Inc. in performance of reconstruction of Fair Street (CR60) and replacement of BIN 3345590 over Middle Branch Croton River – Contract No. RSB-130147 for which Colonial Surety Co. issued its bond No. CSC-211460, a copy of which is hereto annexed as Exhibit A.

In addition, Colonial seeks payment for Force Account work performed at the direction of the County of Putnam.

3    Colonial Surety Company, as payment and performance bond surety, is subrogated to the rights of the unpaid laborers, material suppliers and subcontractors, which have

Exhibit C

been paid on behalf of its bond principal, Realife Land Improvement, Inc., plus claims for extras, change order work and retainage in a sum in excess of $750,000, which has become due and owing on or about January 31, 2008.

4.    The item of damages or injuries claimed are (including dollar amounts):  Final payment on the subject project, in the sum of $750,000.

5.    The undersigned claimant, therefore, presents this claim for adjustment and payment.  You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant intends to commence an action on this claim.

Dated: February 8th, 2008

COLONIAL SURETY COMPANY

By: _____
      Wayne Nunziata, President

KLOTZ & MCCANN
Attorneys for Claimant

By: _____
      Robert W. McCann
      P.O. Box 654
      649 Lafayette Avenue
      Hawthorne, NJ 07507
      973-427-8900

## CORPORATE VERIFICATION

STATE OF NEW JERSEY    )
                                        SS
COUNTY OF BERGEN       )


Wayne Nunziata, being of full age, duly sworn, deposes and says that the deponent is the

President of Colonial Surety Co., the corporate claimant named in the within Notice of Claim,

that the deponent has read the foregoing Notice of Claim and knows the contents thereof, and

that the same is true to deponent's own knowledge, except to the matters therein stated to be

alleged upon information and belief, and as to those matters, deponent believes them to be true.

This Verification is made by deponent because said claimant is a Pennsylvania

corporation, and deponent, an officer thereof, to wit, its President.  The grounds of deponent's

belief as to all matters not stated upon deponent's knowledge are as follows:  information and

belief.

                                                    _____
                                                    Wayne Nunziata


Sworn to before me this 8th
day of February, 2008.

_____
Notary Public of New Jersey

      THERESA SIMMONS
   A Notary Public of New Jersey
My Commission Expires September 2, 2010

# COLONIAL SURETY COMPANY

- Inc. 1930 -

50 Chestnut Ridge Road
Montvale, NJ 07645
201-573-8788

BOND NUMBER CSC-211460

## PERFORMANCE BOND

Approved by The American Institute of Architects
A.I.A. Document No. A-311 (Feb. 1970 Edition)

### KNOW ALL PERSONS BY THESE PRESENTS:

That __Realife Land Improvement, Inc., Patterson, NY__

as Principal, hereinafter called Contractor, and COLONIAL SURETY COMPANY a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, as Surety, hereinafter called Surety, are held and firmly bound unto

__County of Putnam, Carmel, NY  10512__

as Obligee, hereinafter called the Owner, in the amount of

__Three Million Six Hundred Eighty Seven Thousand Two Hundred Dollars And No Cents Dollars ($3,687,200.00),__

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated     __March 15th, 2005,__          entered into a contract with the Owner for __Reconstruction of Fair Street (CR 60) & Replacement of Bin 3345590 over Middle Branch Croton River - Contract No. RSB 130147__

in accordance with drawings and specifications prepared by (here insert full name, title and address) . . .   which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
(1) Complete the Contract in accordance with its terms and conditions, or
(2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.  The term 'balance of the contract price', as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of Owner.

Signed and sealed this  __22nd day of March A.D., 2005.__

In the presence of:

Realife Land Improvement, Inc.

By_____(Seal)
                    (Principal)

**COLONIAL SURETY COMPANY**

Exhibit A

By_____.
       Sherryanne DePirro                      Attorney-in-Fact        ____(Seal)

Form C200-104